SCHUSTER v. NICHOLS, Internal Revenue Collector.

District Court, D. Massachusetts. June 3, 1927.

No. 2450.

1. Internal revenue ☞7(25)—Cemetery corporation, selling lots to public generally, held not "charitable" corporation, so as to make donations to it deductible from gross income for tax purposes (Revenue Act 1918, § 214a, subd. 11, and § 231; Revenue Act 1921, § 214a, subd. 11, and § 231 [Comp. St. §§ 6336⅛g, 6336⅛o]).

A cemetery corporation, organized under Sp. Laws Mass. 1858, c. 128, selling lots to the public generally, *held* not a corporation organized and operated exclusively for "charitable" purposes, within Revenue Act 1918, § 214a, subd. 11, and Revenue Act 1921, § 214a, subd. 11 (Comp. St. § 6336⅛g), in view of Revenue Acts 1918 and 1921, § 231 (Comp. St. § 6336⅛o), and donations to such corporation for beautifying and improving cemetery were not deductible from gross income for income tax purposes, though corporation issued no stock and paid no dividends.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Charitable.]

2. Statutes ☞205—Resort may be had to whole act, to ascertain meaning of ambiguous language of taxing statute.

In construing an ambiguous provision of a taxing statute, it is permissible to resort to provisions of the whole act, to ascertain meaning intended.

3. Internal revenue ☞4—Any doubt as to extent of tax exemption must be resolved in favor of the sovereignty.

Any doubt as to the extent of an exemption from taxation must be resolved in favor of the sovereignty and against the exemption.

At Law. Action by Walter E. Schuster against Malcolm E. Nichols, Collector of Internal Revenue. Judgment for defendant.

Henry Herrick Bond and Ralph E. Tibbetts, both of Boston, Mass., for plaintiff.

Marcus Morton, Jr., Asst. U. S. Atty., of Boston, Mass., for defendant.

BREWSTER, District Judge. This is an action brought to recover income taxes, amounting in the aggregate to $14,085.14, assessed upon the plaintiff's income, which taxes were paid under protest. Claims for refund were duly filed and denied. The facts are not in dispute. Briefly stated, they are as follows:

The plaintiff filed his returns of net income for the calendar years 1918, 1919, 1920, and 1921. In his return for each of said years he deducted from his gross income certain amounts which he had contributed during the years in question to the East Douglas Evergreen Cemetery Company, of East Douglas, Mass., claiming these deductions as contributions to a charitable corporation. The amounts deducted from his income for each of the years in question on account of such contribution were as follows: For the year 1918, $5,000; for the year 1919, $13,494.87; for the year 1920, $12,276.44; for the year 1921, $977.24.

On review of the plaintiff's return for each of the said years, the Commissioner of Internal Revenue disallowed these deductions, as a result of which an additional tax was assessed against the plaintiff for each year as follows: 1918, $3,190.32; 1919, $6,546.30; 1920, $3,737.51; 1921, $371.74.

The East Douglas Evergreen Cemetery Company is a corporation created by special act of the Legislature of the commonwealth of Massachusetts, enacted March 27, 1858 (chapter 128, Special Laws 1858). The corporate purposes were set forth in section 3 of the act, which reads as follows:

"Sec. 3. The said corporation shall take and hold the real estate aforesaid for a rural cemetery or burial ground, and for the erection of tombs, cenotaphs or other monuments for, or in the memory of, the dead; and for this purpose shall have power to lay out the same in suitable lots or subdivisions for family or other burying places; to plant and embellish the same with trees, shrubbery and other rural ornaments; to inclose and divide the same with suitable walls and fences; and to construct and annex thereto such suitable buildings, appendages and other conveniences, as said corporation shall from time to time deem expedient."

The act further empowered the corporation to acquire and hold real estate in the town of Douglas for the purposes of the corporation, and to grant and convey "to any person or persons the sole and exclusive right of burial" in any of the lots or subdivisions, and to erect tombs and cenotaphs "upon such terms and conditions, and subject to such regulations, as said corporation shall prescribe, which right, so granted and conveyed, shall be held for the purposes aforesaid, and for no other." Under the statute the real estate was to be exempt from public taxes so long as it remained dedicated to cemetery purposes.

The by-laws of the corporation vested in a board of trustees authority to lay out, appraise, and sell at not less than the appraisal value burial lots, and to improve the grounds inclosed for the purpose of a cemetery as the proceeds of sales would permit. All lot owners were members of the corporation, and there was no limitation in the charter or by-laws as to the persons who might purchase lots. No capital stock was ever issued, and no dividends ever paid to members. Nothing appears in the special act, or in the by-laws, to indicate that the corporation had any purpose to provide, gratuitously, suitable burial ground for the poor or indigent, who could not afford to pay. It was suggested at the hearing that lots had been conveyed for which the purchase price had not been paid, but the evidence to support this claim was not definite or convincing, and it amounted to no more than that perhaps in a few instances lots had been bought for which the purchase price had not been fully paid. I am unable to find any justification for the conclusion that the corporation had, in fact or in law, a purpose to assist the poor and needy.

The corporation acquired land in the town of Douglas, which was divided into burial lots, and has ever since been dedicated to cemetery purposes. Lots were conveyed subject to the condition that they were to be used for no purpose other than for burial of the dead. The cemetery has been improved and beautified out of proceeds derived from the sale of lots and gifts made by benefactors, among which latter were the contributions of the plaintiff. It is respecting these contributions, made in the years 1918 to 1921, both inclusive, that plaintiff now asserts a right to a deduction from his gross income for the corresponding taxable years.

The statutes upon which plaintiff's claim is based are the Revenue Act of 1918 (section 214a [11], Act of February 24, 1919, c. 18, 40 Stat. 1066 [Comp. St. § 6336⅛g]), and the Revenue Act of 1921 (section 214a [11] B,

Act of November 23, 1921, c. 136, 42 Stat. 227 [Comp. St. § 6336⅛g]).

The pertinent provisions common to both acts may be summarized as follows:

In computing net income, there shall be allowed as deductions contributions or gifts made within the taxable year to any corporation organized and operated exclusively for "charitable" purposes up to a maximum amount.

The controversy between the parties to this action arises over the scope and meaning of the word "charitable" as used in the Revenue Acts.

The plaintiff argues that the word "charitable," as used in the statute, is not to be confined to mere relief of poverty, or distress, or almsgiving, but that it carried a wider signification which embraced any purpose which had for its end the improvement and promotion of the general welfare. Jackson v. Phillips, 14 Allen (Mass.) 539; New England Sanitarium v. Stoneham, 205 Mass. 335, 91 N. E. 385; Molly Varnum Chapter, D. A. R., v. Lowell, 204 Mass. 487, 90 N. E. 893, 26 L. R. A. (N. S.) 707.

This broader definition would undoubtedly obtain in an equity court dealing with a charitable trust within the intent and purview of 43 Eliz. c. 4, which, for the purposes of defining charitable uses, is, in some jurisdictions, at least, accepted as a part of the common law. Jackson v. Phillips, supra; In re Landis, 66 N. J. Eq. 291, 56 A. 1039.

If we concede, for the sake of argument, that the word as used in the federal statute is to be given this comprehensive meaning, the adjudications in this commonwealth, which this court may with propriety follow, leave serious doubts whether the East Douglas Evergreen Cemetery Company comes within that definition. Donnelly v. Boston Catholic Cemetery Asso., 146 Mass. 163, 15 N. E. 505; Milford v. County Commissioners of Worcester, 213 Mass. 162, 100 N. E. 60; Alex. H. Bullock, Tr., v. Commissioner of Corporations and Taxation (Mass., May 24, 1927), 156 N. E. 743.

In Milford v. County Commissioners of Worcester, supra, the question was whether the Pine Grove Cemetery was exempt under a Massachusetts statute which relieved from taxation the personal property of "benevolent" and "charitable" institutions. The facts in that case, so far as they relate to the corporate purposes, the manner of conducting the corporate activities, and the membership, were in all essential details similar to those presented in the case at bar. Chief Justice Rugg, in disposing of this issue, doubted

whether the corporation was a charitable corporation, but based his decision upon the ground that the tax exemption laws manifested a legislative purpose not to include cemetery corporations under the designation of charitable or benevolent institutions.

[1] I am of the opinion that the decision in the case now before me can well be disposed of upon the same ground. The language employed in framing section 214 of the Revenue Laws of 1918 and 1921 reflects an intent not to include cemetery corporations under the designation of charitable corporations. This intention appears clearly when we consider the context of the eleventh subdivision of section 214 (a) of the Revenue Act of 1918, and of clause B of subdivision 11 of section 214 (a) of the Revenue Act of 1921. In the earlier statute the allowable deductions are "contributions or gifts made within the taxable year to corporations organized and operated exclusively for religious, charitable, scientific, or educational purposes, or for the prevention of cruelty to children or animals." In the latter statute the allowable deductions are to "any corporation, or community chest fund or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including posts of the American Legion or the Women's Auxiliary units thereof, or for the prevention of cruelty to children or animals."

[2] The position of the word "charitable," in a sentence including religious, scientific, and educational purposes, all of which would be regarded as charitable purposes under the statute of 43 Eliz., points irresistibly to the conclusion that Congress was here using the word "charitable" in its more narrow and restricted sense, as signifying those corporations which were organized and maintained exclusively for eleemosynary purposes. On any question of interpretation it is permissible to resort to the provisions of the whole act, in order to ascertain therefrom what meaning dubious language is intended to convey. Milford v. County Commissioners of Worcester, supra.

The provisions of section 231 of the Revenue Acts (Comp. St. § 6336⅛o) also furnish unmistakable indication that it was not the intention of those who enacted the laws to bring cemetery corporations within the class of corporations devoted to charitable purposes. This section deals with the exemption of certain corporations from the corporation income tax. Clause 6 of the section exempts corporations "organized for religious, charitable, scientific, literary or educational purposes"; but, notwithstanding that charitable corporations were included among the corporations exempt under clause 6, it was deemed necessary to incorporate another clause (clause 5) expressly relieving cemetery corporations from the burden of the tax.

[3] As is suggested in the brief for the government, the statute was drafted to apply to every state in the Union. In some of these the statute of Elizabeth is incorporated in the common law, and in others it is not. In some states charities have been particularly defined by statute. It was necessary to give the word "charitable" a meaning which would have universal application. This meaning is most naturally found in the restricted sense of the word, as referring to the relief of the poor. If we were defining the scope of a gift to charitable purposes, undoubtedly it would be incumbent upon the court to adopt the more comprehensive meaning of the word "charitable"; but a different rule of construction applies to a statute by the terms of which one claims exemption from taxation. Any doubt as to the extent of the exemption must be resolved in favor of the sovereignty. Bank of Commerce v. Tenn., 161 U. S. 134, 16 S. Ct. 456, 40 L. Ed. 645; Swan & Finch Co. v. United States, 190 U. S. 143, 23 S. Ct. 702, 47 L. Ed. 984.

"An exemption from taxation is an extraordinary grace of the sovereign power, and is to be strictly construed." Rugg, C. J., in Milford v. County Commissioners of Worcester, supra, at page 165 (100 N. E. 62).

My conclusion is, therefore, that the East Douglas Evergreen Cemetery Company, to which the plaintiff made his contributions, was not a corporation organized and operated exclusively for charitable purposes within the meaning of the applicable Revenue Acts, and that the action of the Commissioner of Internal Revenue in disallowing the deductions was correct.

Judgment for the defendant.