WILBER NATIONAL BANK OF ONEONTA, N. Y., EXECUTOR AND TRUSTEE, ESTATE OF GEORGE I. WILBER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21666. Promulgated September 28, 1929.

*Alva Seybolt, Esq.*, for the petitioner.
*P. M. Clark, Esq.*, and *C. C. Holmes, Esq.*, for the respondent.

OPINION.

LITTLETON: At the hearing it was conceded by counsel for the Commissioner, and the evidence so warrants, that the petitioner is entitled to additional deductions as follows:

| | |
|---|---|
| Administration expenses | $4, 335. 44 |
| Executor's commissions | 12, 858. 14 |
| Legal services | 20, 000. 00 |
| Total | 37, 193. 58 |

The foregoing expenses, incurred since the original determination by the Commissioner, are reasonable and are properly deductible. *Irving Bank-Columbia Trust Co. et al., Executors*, 16 B. T. A. 897; *Philip C. K. Bartlett et al., Executors*, 16 B. T. A. 811; *John A.*

*Loetscher et al., Executors,* 14 B. T. A. 228; *Estate of Jacob Voelbel,* 7 B. T. A. 276; *Samuel E. A. Stern et al., Executors,* 2 B. T. A. 102.

The other issues are as to the market value of the 767 shares of stock of the Wilber National Bank and whether the bequest and devise of property of the value of $82,700 to the Glenwood Cemetery Association was to or for the use of a corporation "organized and operated exclusively" for "charitable purposes."

The decedent owned at his death 767 shares of the stock of the Wilber National Bank, the book value of which is stipulated to have been $600 per share and the Commissioner determined its market value to be about the same. This the petitioner contests, insisting that its fair market value, as shown by an appraisement and from some sales of same shortly prior to decedent's death, was only $500 per share. In our opinion, the evidence justifies us in determining the market value of the stock of the Wilber National Bank to be $500 instead of $600 per share. The Commissioner, therefore, erred in increasing the valuation of the decedent's Wilber National Bank stock $100 per share, or $76,700 more than claimed and stated in petitioner's tax return.

The Commissioner held that the bequest and devise of property of the value of $82,700 to the Glenwood Cemetery Association was not an authorized deduction from the decedent's gross estate under the provisions of section 403 (a) (3) of the Revenue Act of 1921.

Whether such holding is correct, is the remaining issue for our determination.

The Act provides that for the purpose of the tax the value of the net estate shall be determined by deducting from the value of the gross estate:

(3) The amount of all bequests, legacies, devises * * * to or for the use of any corporation organized and operated exclusively for * * * charitable * * * purposes * * * no part of the net earnings of which inures to the benefit of any private stockholder or individual, or to a trustee or trustees exclusively for such * * * charitable * * * purposes.

The specific purposes for which the 400 shares of stock of the Albany & Susquehanna Railroad Co. were bequeathed by the decedent to the Glenwood Cemetery Association, as expressed in his will, were that the income from same be paid to the Glenwood Cemetery Association during the lives of David W. Mix and David Forrest Wilber, Jr., or the longest lived of them and after the death of the longest lived of them the same to be held by it "as an endowment stock, for a perpetual fund, and the Dividends, uses and Income therefrom to be used for the perpetual care of the lots known as the David Wilber and George I. Wilber Circle Burial lots; and any surplus income not needed for the care of these two

described lots may be added to the endowment fund, to be used for the general expenses and upkeep of said Cemetery, and I suggest that a portion of the income of said stock shall be used for the erection of a public Vault, (unless previously erected) and for the erection, later on, when required of an Iron Vehicle Bridge across Glenwood Gorge, near where the old foot bridge formerly stood, when deemed advisable and when prices become more normal. The receipt of the Treasurer thereof shall be sufficient discharge to my Executor and Trustee for the same. This legacy is payable and to take effect immediately after my decease, so far as it relates to income, and lands. I ALSO GIVE—DEVISE and BEQUEATH to the said Glenwood Cemetery Association of Oneonta, N. Y., ALL MY RIGHT—TITLE—INTEREST and OWNERSHIP in and to the following lands and premises, located in the City and Town of Oneonta, N. Y.," describing same.

The devise of the land to the Glenwood Cemetery Association does not state the number of acres nor specify for what purpose it should be used.

There is nothing in the fourth clause of the will bequeathing and devising the property mentioned therein which in words designates the property as being for " charitable " purposes.

It is necessary, therefore, for the Board to decide whether the Glenwood Cemetery Association is a corporation organized and operated exclusively for charitable purposes within the meaning of the 1921 Revenue Act.

The Glenwood Cemetery Association was organized pursuant to the provisions of chapter 133, Laws of 1847 (New York), entitled "An Act authorizing the incorporation of rural cemetery associations."

It appears that on May 10, 1886, twelve persons held a meeting at the Central Hotel in the village on Oneonta, N. Y., for the purpose of organizing a " Cemetery Association " in that village; that they did organize, elected six trustees " to manage the concerns of said association," for which they adopted the name " Glenwood Cemetery Association."

The by-laws, rules and regulations of the said association, provide

When a lot has once been purchased within the enclosure of our ground, it becomes for all time the property of the family and cannot be taken for debt, or sold for secular uses, and the ground cannot be encroached upon for any purpose.

   *        *        *        *        *        *        *

* * * All sums paid for lots, or for repairing or improvement upon the same, are expended solely for the care and advancement of the ground.

The by-laws provide for the payment to the superintendent of certain charges, before or at the time of interments.

Section 4 of Article III of the by-laws, is as follows:

Single graves may be procured in public lots appropriated for that purpose, at ten dollars each for an adult and six dollars for a child, which price will include the opening and closing and sodding the grave. If lots should afterwards be purchased and the bodies removed the full cost of the graves located will be allowed after deducting the expense of the original interment, and for the disinterment of the remains.

The Act of 1847, under which the Glenwood Cemetery Association was organized, has, among others, the following provisions:

Sec. 4. Any association incorporated under this act, may take by purchase or devise, and hold within the county in which the certificate of their incorporation is recorded, not exceeding two hundred acres of land; to be held and occupied exclusively for a cemetery for the burial of the dead. * * * Any association incorporated under this act, may hold personal property to an amount not exceeding five thousand dollars, besides what may arise from the sale of lots or plats.

Sec. 7. * * * One-half at least of the proceeds of all sales of lots or plats shall be first appropriated to the payment of the purchase money of the lands acquired by the association, until the whole purchase money shall be paid, and the residue thereof to preserving, improving and embellishing the said cemetery grounds and the avenues, or roads leading thereto, and to defraying the incidental expenses of the cemetery establishment. And after the payment of the purchase money and the debts contracted therefor, and for surveying and laying out the land, the proceeds of all future sales shall be applied to the improvement, embellishment and preservation of such cemetery and for incidental expenses, and to no other purpose or object.

Sec. 10. The cemetery lands and property of any association, formed pursuant to this act, shall be exempt from all public taxes, rates and assessments; and shall not be liable to be sold on execution, or be applied in payment of debts, due from any individual proprietors. But the proprietors of lots or plats in such cemeteries, their heirs, or devisees, may hold the same exempt therefrom so long as the same shall remain dedicated to the purpose of a cemetery, and during that time, no street, road, avenue, or thoroughfare shall be laid through such cemetery, or any part of the lands held by such association, for the purposes aforesaid; without the consent of the trustees of such association, except by special permission of the legislature of the state.

Sec. 11. Whenever the said land shall be laid off into lots or plats, and such lots or plats or any of them shall be transferred to individual holders, and after there shall have been an interment in a lot or plat so transferred, such lot or plat from the time of such first interment shall be forever thereafter inalienable, and shall upon the death of the holder or proprietor thereof descend to the heirs at law of such holder or proprietor, and to their heirs at law forever; provided, nevertheless, that any one or more of such heirs at law may release to any other of the said heirs at law his, her or their interest in the same, * * *

Many authorities are cited in support of petitioner's contention that Glenwood Cemetery Association is organized and operated exclusively for charitable purposes.

We find nothing in the original articles of incorporation of Glenwood Cemetery Association, nothing in the law under which it was

incorporated, and nothing in the evidence as to its method of operation, that indicates that it was "organized and operated exclusively for charitable purposes."

The act under which Glenwood Cemetery Association was organized has been long since repealed. See McKinney's Consolidated Laws of New York, Book 34, Membership Corporations Law, p. 150.

Various sections of New York laws and numerous authorities are cited in an attempt to sustain the contention that Glenwood Cemetery Association is organized and operated exclusively for charitable purposes.

In our opinion, however, in the circumstances of the instant case, neither the old nor the new law warrants such conclusion. The most that can be said is that the Glenwood Cemetery Association was organized and operated exclusively for *cemetery* purposes. The law did not provide for the giving to the poor either lots or graves in the cemetery, but there was a fixed price for each.

The fact that no one, who could pay the price, was excluded from becoming a purchaser of a lot, or, if unable, was never forbidden free burial in a certain section of the cemetery, did not make its operation "exclusively" for charitable purposes.

Those who did buy lots, secure deeds thereto and have interments made therein acquired inheritable property, for which they are presumed to have paid full value and were in no sense objects of charity or the recipients of charitable gifts.

The fact that Glenwood Cemetery Association was organized and is operated exclusively for *cemetery purposes;* that no part of its net earnings inures to the benefit of any private stockholder or individual; that its purposes are public rather than private; that the real estate of such cemetery is exempt from taxation, does not necessarily constitute it an organization or association operating "exclusively for charitable purposes."

In the organization and operation of the Glenwood Cemetery Association, as disclosed by the evidence, there no doubt enter benevolent and charitable purposes, and the bequest and devise by the decedent of the shares of stock and land mentioned in clause four of his will, might be considered to constitute a benevolent act and charitable gift to the association.

How much of what was given should be considered *exclusively* for charitable purposes, how much attributed to benevolence and how much for the perpetual care of the family circle burial lots of David Wilber and George I. Wilber, we can not from the evidence determine.

Benevolence has a broader meaning than charity. Charity may be benevolence, but all benevolence is not necessarily charity. Acts of benevolence and charity are highly favored.

The tax statutes limit deductions to organizations whose purposes are *exclusively charitable* (aside from those clearly not to be considered here) and in the light of the law under which the Glenwood Cemetery Association was organized and the purpose and method of its operations as disclosed by the evidence, we are of the opinion that the action of the Commissioner in disallowing the claimed deduction of the bequest and devise of property of the value of $82,700 to the Glenwood Cemetery Association should be approved, and we so adjudge. See *City National Bank of Dallas, Executor*, 16 B. T. A. 719, and *Bert R. McReynolds, Executor*, 1 B. T. A. 815.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*