HASSETT, Former Acting Collector of Internal Revenue, v. ASSOCIATED HOSPITAL SERVICE CORPORATION OF MASSACHUSETTS.

No. 3708.

Circuit Court of Appeals, First Circuit.

Feb. 4, 1942.

MAGRUDER, Circuit Judge, dissenting.

Lyle M. Turner, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch, Sp. Asst. to Atty. Gen., and Edmund J. Brandon and George F. Garrity, both of Boston, Mass., on the brief), for appellant.

Roger W. Hardy, of Boston, Mass., for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

The plaintiff brought this action to recover taxes alleged to have been assessed and collected illegally under Title VIII of the Social Security Act of 1935, 49 Stat. 636, 639, 42 U.S.C.A. § 301 et seq., on the ground that the plaintiff is exempt from the act being "a corporation * * * organized and operated exclusively for * * * charitable * * * purposes * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual".[1] The District Court gave judgment for the plaintiff holding that it was such a corporation. The defendant has appealed.

The plaintiff, Associated Hospital Service Corporation of Massachusetts, was organized in March, 1937, under the provisions of Chapter 176A of the General Laws of Massachusetts (Ter.Ed.) as added by Chapter 409 of the Acts of 1936. The statute provides for the organization of corporations for the purpose of operating a non-profit hospital service plan whereby hospital care may be provided for subscribers to the plan under contracts which entitle subscribers to certain hospital care.

Membership in the corporation was made up of voting members, members-at-large and the participating hospital members. The voting members include Trustees and Executive Committee of Hospital Council of Boston, Massachusetts Hospital Association, Suffolk District Medical Society, Massachusetts Medical Society, Norfolk District Medical Society, Norfolk South District Medical Society, Middlesex East Medical Society, Middlesex South Medical Society, Boston Chamber of Commerce, Associated Industries of Massachusetts, Community Federation of Boston, and Council of Social Agencies. The incorporators and board of directors are men who have been engaged for years in humanitarian activities. A majority of the board of directors is composed of directors or trustees of hospitals designated in Chapter 176A, Section 1 of the General Laws of Massachusetts.

In accordance with the charter and by-laws, the plaintiff entered into contracts with subscribers to render to them specific hospital service for one year unless sooner terminated and with participating hospital members for the care of its subscribers. At the present time the plaintiff has about 265,000 subscribers.

The contracts with the hospitals contain the following provision: "It is understood that the * * * rates are subject at all times to change by and (sic) determination of our board of directors, and the approval of the Department of Public Welfare of the Commonwealth of Massachusetts. In cases of war, public disaster, general epidemic, or other conditions occasioning an unusual excessive demand for hospital care

---

1 "Section 811. [§ 1011.] When used in this title [sections 1001 to 1010 of this chapter]— * * *

"(b) The term 'employment' means any service, of whatever nature, performed within the United States by an employee for his employer, except—

* * * * * *

"(8) Service performed in the employ of a corporation, community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual." U. S.C.A. Title 42, § 1011.

beyond the ability of this Corporation to pay for at regular established rates, the member hospitals agree that a pro rata deduction may be made." Early in the year 1939 administrative costs and hospital charges were beyond the plaintiff's ability to pay. Thereupon in March, 1939, the board of directors adopted the following resolution: "That, in the opinion of the Board, conditions existing occasion a demand for hospitalization beyond the ability of this Corporation to pay for at established rates, and, therefore, pursuant to the provisions of the contracts existing with member hospitals, a pro rata deduction of 20% shall be made from bills of member hospitals for private and semi-private cases discharged during the months of March and April, 1939, said hospitals to be reimbursed for such deduction as soon as, in the opinion of the Board, conditions justify such reimbursement." In accordance with this resolution the plaintiff deducted 20% from payments to the hospitals in March and April of the year 1939 but later repaid this deduction in full.

No officer or director is to be paid any compensation for any services he may render the plaintiff unless such compensation is authorized by vote of a majority of the directors. At the present time no officer of the corporation receives compensation. The parties stipulated:

"(10) From the organization of the plaintiff on March 11, 1937 to December 31, 1937 the plaintiff received earned income of $6,151.19, spent for administration $17,354.-11 and for hospitalization $4,393.

"(11) During the year 1938 the plaintiff received earned income of $425,182.20, spent for administration $108,624.17 and for hospitalization $323,810.87.

"(12) During the year 1939 the plaintiff received earned income of $1,453,559.25, spent for administration $181,452.20 and for hospitalization $1,109,425.28.

"(13) During the year 1940 the plaintiff received earned income of $1,840,645.54, spent for administration $220,305.24 and for hospitalization $1,308,954.55."

There are no specific provisions in the charter, by-laws or contracts with subscribers as to assessments for the payment of deficiencies in the case where the corporation is unable to meet current demands, or as to the payment of dividends in the case where the corporation has a surplus. An examination of the history of the corporation leads to the conclusion that subscribers are not to be assessed in case of a deficiency and any surplus in a given year is to be retained by the corporation, and we shall proceed on this assumption.

The pertinent part of Title VIII of the Social Security Act of 1935 is Section 811(b) (8). If the plaintiff is a corporation organized and operated exclusively for charitable purposes, it is exempt from the tax provisions of the Social Security Act. The plaintiff maintains that it is such a corporation. It says its object is the promotion of health. Its deficiencies are not assessed upon subscribers nor are its earnings divided among them. Any surplus created is to be used to reduce rates or increase services. The principal officers of the corporation are serving without compensation and its board of directors is composed of men who have been engaged in humanitarian activities for many years.

■ We cannot accept the taxpayer's argument. We feel that it is being conducted more on a business than a charitable basis. The payment of a fee is prerequisite to the receipt of benefits and the relationship existing between the corporation and the subscriber is contractual. The subscribers consider themselves neither charitable donors nor the recipients of charity. The corporate capital is not composed of charitable contributions but of fees exacted from subscribers. Without the subscription payments the corporation could not function. Membership is not limited to the needy but as a matter of fact is composed largely of the middle class and well-to-do. It is difficult to distinguish the plaintiff corporation from a mutual insurance company or an employee benefit plan. Here we have what is essentially a business arrangement under which a group of people have banded themselves together to purchase at rates as low as possible hospital care in the event of sickness or accident. These rates are subject to approval by the Massachusetts Commissioner of Insurance. Such a corporation is not charitable. Cf. Appeal of Philadelphia & Reading Relief Ass'n, 4 B.T.A. 713; Coe v. Washington Mills, 1889, 149 Mass. 543, 21 N.E. 966; Wilber National Bank of Oneonta v. Commissioner, 17 B.T.A. 654; Schuster v. Nichols, D.C.Mass.1927, 20 F. 2d 179.

While the charging of fees does not necessarily render an institution non-charitable, Restatement of Trusts, § 376(c), still the taxpayer exacts a fee as prerequisite to the receipt of benefits in every case. This is not true of the ordinary

charitable organization. Many charitable educational institutions charge fees but they do not require payment in every case and ordinarily the fee bears no precise relation to the cost of the benefit conferred.

The plaintiff says that we are bound by United States v. Proprietors of Social Law Library, 1 Cir., 1939, 102 F.2d 481. That case is distinguishable from the case at bar. While the facts in both cases are nearly the same, we feel that the plaintiff corporation is more akin to a business organization than the one involved in the Social Law Library case. There the corporate capital was composed in good part of charitable gifts, the payment of a fee was not prerequisite to the receipt of benefits in every case and the fee did not bear an exact relation to the cost of the benefit conferred.

■ The plaintiff corporation is different from the ordinary mutual insurance company in that the plaintiff does not make assessments upon its subscribers for the payment of deficiencies nor does it divide any surplus among them by way of dividends. The fact that it meets deficiencies out of future subscription fees and uses its surplus to reduce rates or increase services for future members is not sufficient to make the plaintiff a charity. The mutual insurance company retains at least some of its surplus for the benefit of future members. This partial retention of surplus does not render a mutual insurance company a charitable organization. The mere fact that the plaintiff retains its entire surplus for the benefit of future members is not sufficient to make the organization a charitable one.

■ The plaintiff further says that the main distinction between it and a mutual insurance company is that any surplus which the plaintiff may have on liquidation must be devoted to some charitable purpose, whereas the surplus of a mutual insurance company on liquidation will be divided among the members of the company. This is not enough to make the plaintiff charitable. It is extremely unlikely that there will ever by any surplus to liquidate. So long as the corporation is successful it will continue to operate. If it is not successful there will be no surplus. We do not feel that a corporation should be classified as a charity on the basis of a contingency unlikely to happen. Moreover, the subscribers responsible for the creation of the surplus do not act out of any charitable motive but pay their subscriptions solely on a business basis with full knowledge that if there is any surplus in a particular year they can become members in the following year and get the benefit of the reduced rates or increased services resulting from the surplus.

■ That Congress did not intend organizations similar to the plaintiff to be considered corporations organized and operated exclusively for charitable purposes is borne out by an examination of the statutes. The section of the Social Security Act here involved is exactly the same as Section 101(6) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code, § 101(6), dealing with exemptions from income taxation. The income tax law, however, differs from the social security law in one important respect. In addition to the exemption granted to corporations organized and operated exclusively for charitable purposes, it also grants exemptions to certain types of mutual savings banks; fraternal beneficial societies; cooperative building and loan associations and banks; cooperative cemetery companies; benevolent life insurance associations of a purely local character; mutual ditch and irrigation companies; mutual or cooperative telephone companies or like organizations; farmers' or other mutual hail, cyclone, casualty or fire insurance companies or associations; farmers', fruit growers' or like associations organized and operated on a cooperative basis; voluntary employees' beneficial associations providing for the payment of life, sick, accident or other benefits to the members of such associations or their dependents; and teachers' retirement fund associations. None of these specific exemptions is contained in the Social Security Act. The fact that Congress specifically mentioned these organizations, even though the statute contained the exemption granted to corporations organized and operated exclusively for charitable purposes, would seem to indicate that Congress did not consider these organizations specifically mentioned to be within the scope of a charitable organization.[2] Since the plaintiff closely resembles many of the organizations specifically ex-

---

2 The following comment should be noted:

"Under the income tax statute cemeteries not operated for gain have been

empted, Congress could not have intended it to fall within the scope of a corporation organized and operated exclusively for charitable purposes.

■ In all cases under the income tax law this section and an indentical section[3] have been construed liberally. See Faulkner v. Commissioner, 1 Cir., 1940, 112 F.2d 987. It is natural to conclude that the similar section under the Social Security Act should be construed in the same way. Yet it could be argued that the exemption in the Social Security Act should not be construed liberally because the purpose of that act is remedial. We feel bound, however, by the rule developed in the income tax cases that this exemption should receive a liberal construction. Even so construed, this is not a charitable institution.

The plaintiff relies strongly on the Massachusetts Act[4] which describes the plaintiff corporation as "charitable and benevolent" and exempts it from taxation, and on the Congressional Act[5] which exempts from taxation a similar plan in the District of Columbia, describing it as "charitable and benevolent." It would appear to be clear that both the Massachusetts Legislature and Congress were desirous of exempting such organizations from taxation even though they felt that these organizations were not charitable in the ordinary sense. If they were charitable organizations in the accepted meaning, there would have been no need for the enactment of statutes describing them as charitable and exempting them from taxation.

■ The Massachusetts statute is important here insofar as it affects the rights, duties and powers of the plaintiff corporation. We have already considered the characteristics of the plaintiff as established by state law, particularly its power with respect to surplus. Beyond that, state nomenclature is not binding on us. There is language in United States v.

Proprietors of Social Law Library, supra, 102 F.2d at page 483, however, which would indicate that the court there thought that the mere description of a corporation in the statute as "charitable" was important. We do not agree with that language. It is our function to determine the rights, duties and powers of the plaintiff under Massachusetts law and then to determine whether a corporation with such rights, duties and powers is to be exempt from taxation under the federal statutes. The rule is laid down in Morgan v. Commissioner, 1940, 309 U.S. 78, at page 80, 626, 60 S.Ct. 424, 426, 84 L.Ed. 585, 1035. The Supreme Court said:

"State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed. If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law."

■ We have concluded that the plaintiff has not the characteristics of a charitable organization in the ordinary meaning of that term. That Massachusetts labels it a charity is unimportant. That Congress labels a similar plan in the District of Columbia a charity would also seem to be unimportant.

The judgment of the District Court is reversed and the case is remanded to that court for further proceedings not inconsistent with this opinion.

MAGRUDER, Circuit Judge (dissenting).

I think that the judgment below should be affirmed, though the case must be conceded to be a close one.

There might be sound reasons of policy why charitable corporations, the same as

---

consistently placed in a category separate from charitable, religious and educational institutions." Sec. 12.15 Paul, Federal Estate and Gift Taxes (1942), p. 661.

3 Section 23 (o) (2) of the Revenue Act of 1934, 26 U.S.C.A.Int.Rev.Code, § 23 (o) (2).

4 General Laws of Massachusetts (Ter. Ed.) c. 176A, as added by c. 409 of the Acts of 1936.

"Section 10.  *Exemption from Taxa-*

*tion.* Every corporation subject to this chapter is hereby declared to be a charitable and benevolent corporation, and its property shall be exempt from state, county, district and municipal taxes."

5 53 Stat. (part 2) 1412, 1414, c. 698, § 8, Act Aug. 11, 1939.

"This corporation is hereby declared to be a charitable and benevolent institution, and all of its funds and property shall be exempt from taxation other than taxes on real estate."

other employers, should be required to make contributions toward the social security of their employees. However, the Congress has not seen fit so to prescribe. While the present case happens to arise under the Social Security Act, a decision against the plaintiff herein would necessarily involve the conclusion that the plaintiff is not entitled to exemption from income taxes under I.R.C. § 101(6), 26 U.S.C.A. Int.Rev.Code, § 101(6); that a person making a gift to the plaintiff is not entitled to take a deduction therefor from gross income under I.R.C. § 23(q), 26 U.S.C.A. Int.Rev.Code, § 23(q), nor entitled, in computing net gifts under the gift tax, to take a deduction therefor as provided in I.R.C. § 1004(a) (2) (B), 26 U.S.C.A. Int.Rev.Code, § 1004(a) (2) (B); that if a testator makes a legacy or bequest to the plaintiff no deduction therefor from his gross estate can be made under I.R.C. § 812(d), 26 U.S.C.A. Int. Rev.Code, § 812(d), in computing estate taxes. Therefore, it seems to me inadmissible to argue, as the Government does, that § 811(b) (8) of the Social Security Act is to be interpreted narrowly against the plaintiff, because the granting of the exemption here would adversely affect persons who are not parties to the action, namely, plaintiff's employees; whereas the same words under the income, gift and estate tax laws are to be construed liberally. See Faulkner v. Commissioner, 1 Cir., 1940, 112 F.2d 987, 991.

The plaintiff is a non-profit corporation whose basic objective is the promotion of the public health. It aims to make available adequate hospital facilities to people of moderate means, the great middle class, who find it most difficult to meet the cost of hospitalization. Thus large numbers of persons in the community who otherwise might perforce neglect or defer needed care for their bodily ills, to the detriment of the public health, are enabled to procure hospitalization when the need therefor is first manifested. At the same time hospitals, which have been finding it increasingly difficult to balance their annual budgets are, as a result of the plaintiff's activities, being assured of an increasing flow of paying patients, and thus, with an enhanced financial stability, are being enabled to carry on more effectively their indispensable services to the community. Such being the objective of the plaintiff corporation, it seems to me that it is organized and operated exclusively for charitable purposes within the most obvious and familiar usage of that term.

It is true that the funds of the plaintiff corporation are at present derived wholly from fees paid by the annual subscribers rather than from charitable contributions. This does not seem to me to be significant. A non-proprietary hospital corporation might be formed without any initial endowment from charitable contributions, and might for a time have to meet its operating expenses with income derived solely from fees paid by patients. I would not suppose that the hospital would be on that account any less a charitable corporation. Under the plaintiff's charter here it is in fact authorized to establish its own hospitals wherewith to supply hospital care directly. The plaintiff is eligible to receive contributions by way of endowment, which might well enable it to extend its services in the promotion of the public health. No doubt it would be glad to receive charitable contributions; but I do not think its classification as a corporation organized and operated for charitable purposes must await the receipt of the first of such contributions.

The plaintiff is substantially distinguishable from a mutual insurance company. Its annual subscribers are not members of the corporation. They have no collective relationship to the corporation, but their rights are defined in their respective individual contracts with the corporation. They are not subject to assessment. If in a given year the demands for hospitalization among the subscribers are such that the cost of the hospital services and plaintiff's expenses of administration is greater than the amount taken in from fees, the subscribers are nevertheless entitled to the hospital facilities specified in their contracts, without diminution. If, on the other hand, the plaintiff corporation should have an operating profit, as it has in the past two years, the surplus is not to be divided among the subscribers by way of dividends. The funds of the plaintiff corporation are subject to the cy pres doctrine. See A.L. I. Restatement of Trusts, § 399. Upon dissolution of the plaintiff corporation its funds would have to continue being applied to charitable purposes.

That the Congress, in enacting the Social Security Act, did not expressly exempt corporations operating a nonprofit hospital service plan, does not legitimately warrant the inference that Congress intended such

organizations not to be exempt from the act. The movement for the establishment of such organizations was then in its infancy and there is no indication that their status was considered by the Congress or its committees at that time. It does seem to me significant that when Congress first had occasion to consider this type of organization specifically, in 1939, it passed an act incorporating "Group Hospitalization, Inc.," and declared such corporation "to be a charitable and benevolent institution" with all of its funds and property exempt from taxation other than taxes on real estate. 53 Stat. 1412. It would surely be an unintended result if the plaintiff corporation is subject to the social security taxes, while Group Hospitalization, Inc., operating in the District of Columbia in the same general manner, and with the same objective, is exempt. I do not think we can explain away the action of the Congress and the Massachusetts legislature in describing these corporations as "charitable and benevolent" by saying that it was desired to exempt such organizations from taxation even though they were not regarded as charitable corporations in the ordinary accepted sense. A more likely explanation is that the legislative bodies wanted to make it clear that the funds and property of these organizations must continue to be devoted to charitable purposes, thus distinguishing them from mutual insurance companies and similar organizations.