COMMONWEALTH *vs.* CAROLYN T. GARDNER.

SAME *vs.* LUCILE LORD-HEINSTEIN.

SAME *vs.* FLORA RAND.

SAME *vs.* PAMELIA FERRIS.

Essex.   February 7, 8, 1938. — May 26, 1938.

Present: RUGG, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Contraceptive.   Constitutional Law*, Police power.

The provisions of G. L. (Ter. Ed.) c. 272, § 21, are constitutional.

Sale of contraceptives to married women, even on prescription of a physician and for the preservation of their life and health according to sound and generally accepted medical practice, is a violation of G. L. (Ter. Ed.) c. 272, § 21.

THREE COMPLAINTS, received and sworn to in the First District Court of Essex on July 13 and June 22, 1937, and an indictment found and returned in the Superior Court on September 17, 1937.

On appeal of the cases in the District Court, the cases were heard together by *Gray*, J., who found the defendants guilty, and they alleged exceptions.

*R. G. Dodge*, (*W. A. Burrows* with him,) for the defendants.

*J. J. Ryan, Jr.*, Assistant District Attorney, (*E. R. Jackson*, Assistant District Attorney, with him,) for the Commonwealth.

*M. F. Hall & D. J. Hurley*, by leave of court, submitted a brief as *amici curiae*.

RUGG, C.J.    It is provided by G. L. (Ter. Ed.) c. 272, § 21, that "Whoever sells, lends, gives away, exhibits, or offers to sell, lend or give away . . . any drug, medicine, instrument or article whatever for the prevention of conception" shall be punished.    The penalty stamps the crime thus created as a felony.    Violation of this statute at a specified time and place was charged against each of the defendants in these four cases.    When the cases came on for trial it was agreed that the defence consisted of the facts set forth in the written statement of facts presented by them, and that there was no other defence.    The trial judge then heard counsel upon the question of law whether this offer of proof constituted a defence.    Each defendant, having waived the right to trial by jury, was convicted by the trial judge in the Superior Court and was sentenced to pay a fine.    It was admitted at the trial that two of the defendants sold and gave away articles and medicine for the prevention of conception to various patients after another defendant, who was a physician, with the assistance of the fourth defendant, who was a nurse, had examined the patients, and that they were sold or given in accordance with instructions given by the physician either personally or through the nurse.    The four defendants were present in the offices of the North Shore Mothers' Health Office in Salem, though not in the same room, when the examinations were made, the directions given, and the contraceptives prescribed and sold or given to the patients. The only defence was set forth in an offer of proof.    Briefly summarized, it was there stated that the North Shore Mothers' Health Office was an association of persons which conducted the office where the acts charged in these cases took place.    It is a charitable organization supported by charitable contributions.    That association employed a doctor, who was a duly qualified physician and in charge of

the medical work in the office. It also employed a registered trained nurse, who assisted the physician. The other two defendants were members of the association, trained social workers, and worked as such for the association without pay. The physician in charge agreed to keep within the provisions of law as interpreted by an attorney, to the effect that the statute here in question does not apply to articles intended to be used for the prevention of conception only upon prescription by a duly qualified physician when necessary for the preservation of life or health according to sound and generally accepted medical practice. Offices like that maintained by this association exist in several other places in this Commonwealth. It is sound and generally accepted medical practice to prescribe contraceptives to protect life and health. This proposition is supported by numerous medical organizations. Patients are usually referred to the association by hospitals, social welfare agencies and private physicians. "Patients accepted are married women only, not pregnant, whose physical or mental condition contra-indicates further or immediate pregnancy." It is not necessary to pursue the description of methods employed by the defendants, or their theories as to advisability of the use of contraceptives. There is no contention that the defendants did not do the acts charged. The trial judge "ruled that the admissible and competent evidence contained in the offer of proof" thus made by the defendants constituted no defence. Each defendant excepted to this ruling of law. The cases come before us by a consolidated bill of exceptions to this ruling.

The defendants contend that the statute does not apply to drugs, medicines, instruments, or articles for the prevention of conception when they are intended for such use only upon prescription by a duly qualified physician for the preservation of life or health according to sound and generally accepted medical practices, and that, otherwise, the statute is unconstitutional under both the State and the Federal Constitutions.

The terms of G. L. (Ter. Ed.) c. 272, § 21, already quoted,

are plain, unequivocal and peremptory. They contain no exceptions. They are sweeping, absolute, and devoid of ambiguity. They are directed with undeviating explicitness against the prevention of conception by any of the means specified. It would be difficult to select appropriate legislative words to express the thought with greater emphasis. It is a canon of interpretation that the words of a statute are to be construed according to the common and approved usage of the language considered in connection with the cause of its enactment, the preëxisting state of the law, and the main object to be accomplished. *Brown* v. *Robinson,* 275 Mass. 55, 57. *Dascalakis* v. *Commonwealth,* 244 Mass. 568, 570.

The provisions of G. L. (Ter. Ed.) c. 272, § 21, first appeared in St. 1879, c. 159, in substantially the same words as are now used. That was the earliest enactment in this Commonwealth respecting the prevention of conception. In framing legislation under the police power the Legislature, without any denial of rights under either the State or the Federal Constitution, might take the view that the use of contraceptives would not only promote sexual immorality but would expose the Commonwealth to other grave dangers. Even though prevention of conception by medical advice and treatment was not unknown in 1879, and might have been the subject of an exception from the general legislative prohibition if the Legislature had deemed such an exception consonant with public policy, the Legislature had equal power to adopt the contrary view that such an exception would endanger the effectiveness of the statute. If any exception had been intended to the broad prohibition enacted, it would have been easy to give expression to it in the statute. In the State of New York, physicians are permitted by statute to prescribe contraceptives under limited and defined circumstances. New York Penal Law, § 1145. *People* v. *Sanger,* 222 N. Y. 192. The inference seems necessary that the moral and social wrongs arising from the prevention of conception appeared to the General Court so threatening in 1879, when the statute was originally enacted, that absolute and uncon-

ditional prohibition against the sale, gift, or loan of contraceptive drugs, medicines, or articles for that end was necessary to meet the conditions. A statute of that nature is constitutional. *Commonwealth* v. *Allison,* 227 Mass. 57. To the same general effect are *Everard's Breweries* v. *Day,* 265 U. S. 545, 561, 563; *Lambert* v. *Yellowley,* 272 U. S. 581; *Commonwealth* v. *Intoxicating Liquors,* 172 Mass. 311.

It was said in *Somerset* v. *Dighton,* 12 Mass. 383, 384–385: "in the exposition of statutes, such a construction should be given as will best effectuate the intention of the makers. In some cases, the letter of a statute may be restrained by an equitable construction; in others, enlarged; and, in others, the construction may be even contrary to the letter. For a case may be within the letter and not within the meaning of a statute." *Zoulalian* v. *New England Sanatorium & Benevolent Association,* 230 Mass. 102, 105. *Commonwealth* v. *Welosky,* 276 Mass. 398, 403. *Church of the Holy Trinity* v. *United States,* 143 U. S. 457, 459. *Sorrells* v. *United States,* 287 U. S. 435, 446. *Jacobson* v. *Massachusetts,* 197 U. S. 11, 38, 39. That principle, in our opinion, is not applicable to the cases at bar, in view of the language of statute. There is nothing in the circumstances of the cases at bar, or in the history of the statute, to support the conclusion that physicians or those acting under their instructions were intended to be excepted from the operation of the statute.

The defendants rely upon decisions by Federal courts upon somewhat similar points. A suit for infringement of a trade-mark was involved in *Youngs Rubber Corp. Inc.* v. *C. I. Lee & Co. Inc.* 45 Fed. (2d) 103. The Federal statute there in issue was more or less obscure, but was interpreted to mean that it was intended to require a purpose that the article sent through the mails was to be used for illegal contraception. Stress was laid, in the opinion, upon New York Penal Law, §§ 1142, 1145, and *People* v. *Sanger,* 222 N. Y. 192, as showing that use of contraceptives by physicians was made lawful in the State of New York. This decision was followed in *Davis* v. *United States,* 62 Fed. (2d) 473. *United States* v. *One Package,* 86 Fed. (2d)

737, related to the interpretation of a Federal tariff act which forbade the importation of any article "for the prevention of conception or for causing unlawful abortion." The reasoning of *Youngs Rubber Corp. Inc.* v. *C. I. Lee & Co. Inc.* 45 Fed. (2d) 103 was followed. Again, great reliance was placed upon *People* v. *Sanger,* 222 N. Y. 192, and the New York statute permitting the use of contraceptives by physicians. But Judge Learned Hand, although concurring in the decision, said at page 740: "There seems to me substantial reason for saying that contraconceptives were meant to be forbidden, whether or not prescribed by physicians, and that no lawful use of them was contemplated." The cases of *Slee* v. *Commissioner of Internal Revenue,* 42 Fed. (2d) 184, and *United States* v. *One Book, Entitled "Contraception,"* 51 Fed. (2d) 525, are too plainly distinguishable to require discussion. No one of these Federal decisions is persuasive to a conclusion in favor of these defendants. These cases all depend in large degree upon *People* v. *Sanger,* 222 N. Y. 192, where the governing statute contained in express terms the exception in favor of physicians, which is absent from the statute here controlling. We think such an exception cannot be read into our statute by judicial interpretation. Our statute must be interpreted and enforced as enacted, for the reasons already stated. The relief here urged must be sought from the law-making department and not from the judicial department of government.

In each case the entry may be

*Exceptions overruled.*