**William R. BAIRD, Petitioner, Appellant,**

v.

**Thomas S. EISENSTADT, as he is Sheriff of Suffolk County, Massachusetts, Respondent, Appellee.**

**No. 7578.**

United States Court of Appeals,
First Circuit.

Heard June 4, 1970.

Decided July 6, 1970.

———◆———

Chester C. Paris, Boston, Mass., with whom Joseph J. Balliro, Boston, Mass., was on brief, for petitioner, appellant.

Lawrence P. Cohen, Asst. Atty. Gen., with whom Robert H. Quinn, Atty. Gen., John J. Irwin, Jr., Asst. Atty. Gen., Chief, Criminal Division, Garrett H. Byrne, Dist. Atty., and Joseph R. Nolan, Asst. Dist. Atty., Suffolk County, were on brief, for respondent, appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Petitioner Baird brings this petition for habeas corpus to attack his conviction for violation of Mass.G.L. c. 272 § 21, Commonwealth v. Baird, 1969 Mass. A.S. 727, 247 N.E.2d 574, cert. denied 396 U.S. 1029, 90 S.Ct. 580, 24 L.Ed.2d 524, hereinafter *Baird,* on the ground that the statute, insofar as it is directed against contraceptives, is unconstitutional. The facts are these. In April 1967 petitioner, pursuant to an invitation, addressed a group of students at Boston University on the subject of contraception. On a demonstration board he exhibited various contraceptive devices, and at the close of his talk he invited members of the audience to come and help themselves. He personally handed to an unmarried adult woman a package of vaginal foam, a publicly advertised contraceptive. He was thereupon arrested and charged with a) exhibiting, and b) delivering, a contraceptive article.[1]

Following a trial, and a finding of guilty on both counts, the Superior Court pursuant to a Massachusetts procedural statute requested review by the Supreme Judicial Court of the constitutionality of the statute. That court unanimously held that the conviction for exhibiting contraceptive articles violated petitioner's First Amendment rights. By a 4–3 majority it upheld the constitutionality of the provision against delivery, holding, *inter alia,* that this went beyond free speech, and that the statutory proscriptions were severable. The court ruled that forbidding delivery of contraceptive articles was supportable as a legitimate protection of public health. Significantly, the majority said nothing on the subject of morals. Nor did the court address itself to the question why a married woman's health was to be protected by requiring medical assistance, and an unmarried woman's by denying it, a question more pressingly raised in Sturgis v. Attorney General, post.

The petition for habeas corpus was dismissed by the district court, with opinion. 310 F.Supp. 951. We issued a certificate of probable cause for appeal, and ordered petitioner released on bail.

Petitioner attacks the statute on a number of grounds. The first two need not detain us. His extensive argument that the First Amendment entitled him to deliver a contraceptive article as "symbolic speech" is less persuasive than the defendant's claim in United States v. O'Brien that he could emphasize an anti-war speech by burning his draft card. Even there the Supreme Court, as well as, in this respect, ourselves, was unimpressed by the argument that the right of free speech justifies the performance of an act which has been reasonably prohibited on independent substantive grounds. United States v. O'Brien, 1968, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672. Equally unsupportable is the contention that the elimination of a small part of the statute, the provision against exhibition, destroys the statute as a whole. This is not an instance of judicial excision making the remainder difficult to interpret. Nor is this one of those "rarest of cas-

---

1. The statute, which contains a second section as the result of a 1966 amendment, reads as follows.

"Except as provided in section twenty-one A, whoever sells, lends, gives away, exhibits or offers to sell, lend or give away * * * any drug, medicine, instrument or article whatever for the prevention of conception or for causing unlawful abortion * * * shall be punished by imprisonment in the state prison for not more than five years or in jail or the house of correction for not more than two and one half years or by a fine of not less than one hundred nor more than one thousand dollars." (§ 21).

"A registered physician may administer to or prescribe for any married person drugs or articles intended for the prevention of pregnancy or conception. A registered pharmacist actually engaged in the business of pharmacy may furnish such drugs or articles to any married person presenting a prescription from a registered physician. * * * *" (§ 21A).

Concededly petitioner was neither a physician nor a pharmacist.

es" where the statute has been so reduced in scope as to leave it pointless. *See* United States v. Raines, 1960, 362 U.S. 17, 23, 80 S.Ct. 519, 4 L.Ed.2d 524. The excision argument did not persuade the Massachusetts court, whose interpretation of the statute controls; nor does it us.

■ Petitioner's more substantive claims need considerable rephrasing. The issue before us is whether the statute "bears a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare." Sperry & Hutchinson Co. v. Director, 1940, 307 Mass. 408, 418, 30 N.E.2d 269. Or, in the Commonwealth's words, it must be shown that the statute "does not bear a reasonable relationship to a proper legislative purpose, or * * * is * * * arbitrary and discriminatory." Nebbia v. New York, 1934, 291 U.S. 502, 537, 54 S.Ct. 505, 78 L.Ed. 940; Meyer v. Nebraska, 1923, 262 U.S. 390, 399–400, 43 S.Ct. 625, 67 L.Ed. 1042.

The Commonwealth asserts two general purposes, health and morals. In resting its decision on the former the court said in *Baird,*

"The Commonwealth has a legitimate interest in preventing the distribution of articles designed to prevent contraception which may have undesirable, if not dangerous, physical consequences." 1969 Mass. A.S. at 733, 247 N.E.2d at 578.

More recently the court has occasion to expand upon this statement. In Sturgis v. Attorney General, Mass.1970, 260 N. E.2d 687, plaintiffs, two qualified physicians specializing in gynecology, sought under Massachusetts practice a declaratory judgment that the statute is unconstitutional in that it prevents them from furnishing contraceptive assistance to their unmarried patients. The court, Justices Cutter and Spiegel dissenting as to the outcome, stated,

"[T]he Legislature is free to conclude that some harm may conceivably attend the employment of contraceptive devices * * *. [Hence] the prohibition against their distribution bears a real and substantial relation to the legislative purpose."

The court went on to say that Griswold v. Connecticut, 1965, 381 U.S. 479, 85 S. Ct. 1678, 14 L.Ed.2d 510, post, affirmed "beyond doubt" the right of the state "to enact statutes regulating the private sexual lives of single persons."[2] The court, without more, upheld the statute in its full scope, as "protecting the public health."

While we agree with the court's observations as statements of principle, we are unable to find the statute to be an application thereof. Alternatively, if it could be thought to be intended for a proper purpose, we could not find, in the words of the Commonwealth quoted earlier, that it bears "a reasonable relationship" thereto, but, rather, we would find it "arbitrary and discriminatory." We reach these conclusions both because of the statute's total exclusion of the unmarried, and because of its palpable overbreadth with respect to the married.

■ So far as health is concerned, as Justices Whittemore and Cutter, dissenting in *Baird,* pointed out, "If there is need to have a physician prescribe (and a pharmacist dispense) contraceptives, that need is as great for unmarried persons as for married persons." 1969 Mass. A.S. at 738, 247 N.E.2d at 581. But not only are their needs the same, their physical characteristics, and their individual responses to contraceptives must be the same. If the purpose is health, the court's quoted statement in *Sturgis* that the "prohibition against * * * distribution bears a real and substantial relation to the legislative purpose" is, with due respect, beside the mark. The court neglects the fact

2. We note in passing that *Griswold,* in our opinion, in no way establishes "beyond doubt" that the present statute is constitutional. Even the statement on which the court relied came from the concurring opinion of a single justice. (381 U.S. at 498, 85 S.Ct. 1678.)

that the legislature has recognized that health does not require prohibition; a physician may safely prescribe for married persons. If the prohibition which the court supports is to be taken to mean that the same physician who can prescribe for married patients does not have sufficient skill to protect the health of patients who lack a marriage certificate, or who may be currently divorced, it is illogical to the point of irrationality. For reasons we will come to, we do not believe that health is the legislative purpose, but if it is, we hold the statute is arbitrary, and by the same token, grossly discriminatory.

In addition, we must take notice that not all contraceptive devices risk "undesirable * * * [or] dangerous physical consequences." It is 200 years since Casanova recorded the ubiquitous article which, perhaps because of the birthplace of its inventor, he termed a "redingote anglais." The reputed nationality of the condom has now changed, but we have never heard criticism of it on the side of health. We cannot think that the legislature was unaware of it, or could have thought that it needed a medical prescription. We believe the same could be said of certain other products. Petitioner says this is true of vaginal foam. Since he failed to prove it, we cannot so find, but we may assume, broadly, that not all chemical compounds are inherently dangerous. The legislature made no attempt to distinguish, in the statutory restriction, between dangerous or possibly dangerous articles, and those which are medically harmless.

In this posture it is impossible to think of the statute as intended as a health measure for the unmarried, and it is almost as difficult to think of it as so intended even as to the married. If there could be any doubts, it is to be noted that health protection, even for the married, had no place prior to the 1966 amendment. The legislature intended just the opposite. Consistent with the fact that the statute was contained in a chapter dealing with "Crimes Against Chastity, Morality, Decency and Good Order," it was cast only in terms of morals. A physician was forbidden to prescribe contraceptives even when needed for the protection of health. Commonwealth v. Gardner, 1938, 300 Mass. 372, 15 N.E.2d 222. The court in Baird gave the reason for the change. "The amendments made by St.1966, c. 265 [Section 21A, n. 1, ante] were brought about by the decision in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510, which held unconstitutional as applied to married persons a statute prohibiting the use of contraceptives and the giving of advice on the subject." 1969 Mass. A.S. at 729, 247 N.E.2d at 576. On this record we do not believe that the legislature suddenly reversed its field and developed an interest in health. Rather, it merely made what it thought to be the precise accommodation necessary to escape the *Griswold* ruling.

Turning to the second contention, that the statute has a legitimate purpose to protect morals, the Commonwealth argues that lack of access to contraceptive materials will have a deterrent effect upon the commission of fornication, viz., sexual intercourse between consenting, unmarried adults. Fornication is a misdemeanor, entailing a thirty dollar fine, or three months in jail. Mass. G. L. c. 272 § 18. Violation of the present statute is a felony, punishable by five years in prison. We find it hard to believe that the legislature adopted a statute carrying a five-year penalty for its possible, obviously by no means fully effective, deterrence of the commission of a ninety-day misdemeanor. Here, again, we look to history. If the prevention of fornication was the true statutory aim there never was a reason to deny access to contraceptive materials to married persons. Yet, as we have noted, until *Griswold* the married as well as the unmarried were equally proscribed. We are led inevitably to the conclusion that, so far as morals are concerned, it is contraceptives per se that are consid-

ered immoral—to the extent that *Griswold* will permit such a declaration.

To say that contraceptives are immoral as such, and are to be forbidden to unmarried persons who will nevertheless persist in having intercourse, means that such persons must risk for themselves an unwanted pregnancy, for the child, illegitimacy, and for society, a possible obligation of support. Such a view of morality is not only the very mirror image of sensible legislation; we consider that it conflicts with fundamental human rights. In the absence of demonstrated harm, we hold it is beyond the competency of the state. See the various opinions in Griswold v. Connecticut, ante, particularly those of Mr. Justice Harlan and Mr. Justice White, concurring. *See, also* Richards v. Thurston, 1 Cir., 1970, 424 F.2d 1281.

To preserve the statute as one directed towards health would necessitate judicial excision of the expressed distinction between unmarried and married users. Even then, there would be difficulties. Deletion of unsupportable overbreadth, encompassing articles not reasonably believed dangerous to health, would leave the statute with an element of vagueness, a burden we would be reluctant to impose upon the fundamental rights at stake here. Aptheker v. Secretary of State, 1964, 378 U.S. 500, 515–517, 84 S.Ct. 1659, 12 L.Ed.2d 992; *see*, Bouie v. City of Columbia, 1964, 378 U.S. 347, 362, 84 S.Ct. 1697, 12 L.Ed.2d 894. Where the statute, prior to its amendment, advanced no constitutionally permissible objective, and the amendment revealed no purpose except to preserve as much of the statute as possible in the face of supervening judicial authority, we must conclude that any finding of

proper purpose would be mere pretense. *Cf.* Ho Ah Kow v. Nunan, C.C.Cal., 1879, 5 Sawy. 552, 12 Fed.Cas. p. 252, No. 6,-546. We see no basis for a presumption in the statute's favor, *see* United States v. O'Brien, 1968, 391 U.S. 367, 383, 88 S. Ct. 1673, 20 L.Ed.2d 672; Goesaert v. Cleary, 1948, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163, or any reason why we should interpret it or attempt to remold it to achieve some other, legitimate objective.[3]

In so holding we in no way suggest that the legislature may not enact a statute appropriately directed toward the protection of health, to guard married and unmarried persons alike. We observe further, that if the legislature is truly concerned with deterring fornication, it may increase the statutory penalty to mark the measure of its concern. It may not do so, however, by making the penalty a personally, and socially, undesired pregnancy.

Finally, the Commonwealth says that petitioner has not shown that his own constitutional rights have been violated, and therefore that he has no standing to attack the statute. If only some application of the statute were constitutionally unwarranted, there might be merit in this position. We, however, have held the statute itself void. Petitioner is being jailed for a direct violation of that statute; he must have as much standing to protest as anyone else. In this connection we observe that by criticizing him for not seeking declaratory relief instead of acting so as to invite arrest, the Massachusetts court implicitly recognized petitioner's standing and interest. 1969 Mass. A.S. at 735, 247 N.E.2d 574. We will do no less. The order of the Dis-

3. For a discussion of presumptions of permissible purpose see Note, Legislative Purpose and Federal Constitutional Adjudication, 83 Harv.L.Rev. 1887 (1970), centering around United States v. O'Brien, ante. It is true that in *O'Brien* the Court refused to invalidate a statute on the basis of an allegation of improper purpose based in part on what occurred on the floor of Congress during its passage. In

*O'Brien* the Court pointed out that the statute was constitutional on its face. The present statute is not, and cannot be legitimized without both excision and revision. Where such action on our part would have to be undertaken in the light of a statutorily demonstrated impermissible intent, we consider the *O'Brien* teaching to be inapposite.

trict Court is vacated, and the action remanded thereto with instructions to grant the writ discharging the petitioner.