**Linda McCABE, Plaintiff-Appellant,**

v.

**NASSAU COUNTY MEDICAL CENTER et al., Defendants-Appellees.**

**No. 93, Docket 71-1371.**

United States Court of Appeals, Second Circuit.

Argued Oct. 6, 1971.

Decided Dec. 23, 1971.

---

Hays, Circuit Judge, concurred and filed opinion; Moore, Circuit Judge, dissented and filed opinion.

Jeremiah S. Gutman, New York City, (Janet K. Alter, Larchmont, N. Y., Ruth W. Friedman, New York City, on the brief), for plaintiff-appellant.

Louis Schultz, Deputy County Atty., Mineola, N. Y. (Joseph Jaspan, County Atty. of Nassau County, Biagio F. Giaquinto, Senior Deputy County Atty., Natale C. Tedone, Deputy County Atty., on the brief), for defendants-appellees.

Before MOORE, HAYS and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

This case raises grave issues concerning the right of a woman to decide how many children she shall bear. In the summer of 1970, plaintiff Linda McCabe and her husband agreed, for reasons sufficient for them, that she should be sterilized. For that purpose, she went to the Nassau County Medical Center, a public hospital. The Medical Center refused to perform the operation because, according to its rules, Mrs. McCabe had to have five children before she could be sterilized. Mrs. McCabe felt that the rule was arbitrary and vi-

olated her right to decide for herself how many children she wanted. She then brought this action for injunctive and declaratory relief and for damages against the Medical Center, Dr. Stewart L. Marcus, Chief of Obstetrics there, John N. Shell, president of the Medical Center's Board of Managers, and Edward J. Rosasco, Jr., its administrator. In January 1971, the Medical Center reversed itself and permitted the operation to be performed. Thereafter, defendants moved in the United States District Court for the Eastern District of New York to dismiss the complaint as moot. Judge Anthony J. Travia of that court dismissed the action, and this appeal followed. For reasons set forth below, we reverse.

## I

According to the papers before the district judge: Plaintiff was a mature woman of 25 when this action was brought. By that time she had been pregnant six times and had four small children. Because of concern for her health, and for emotional and economic reasons, Mrs. McCabe and her husband decided not to have any more children. But due to a thyroid condition plaintiff could not take birth control pills. The McCabes felt that they could not rely upon other, riskier means of contraception and decided upon sterilization. In early August 1970, plaintiff and her husband visited the Family Planning Clinic of the Medical Center and plaintiff signed various forms consenting to the operation. On August 26, 1970, plaintiff was told orally by a doctor in the Department of Obstetrics and Gynecology that the regulations of the Medical Center forbade the operation unless the applicant already had five children. This advice was confirmed in September in a letter from defendant Dr. Marcus to plaintiff's attorney, which stated in part:

I have reviewed Mrs. McCabe's medical records and have spoken to the physician whom she consulted here. According to the bylaws, rules, and regulations governing sterilization at the Nassau County Medical Center, Mrs. McCabe is not eligible for voluntary sterilization.

According to our records Mrs. McCabe is 26 years old and has four living children. For a woman between the ages of 25 and 29 years, the regulations of the Nassau County Medical Center permit sterilization if the woman has five living children.

The bylaws and regulations at this center are based upon the guide lines and recommendations of the American College of Obstetricians and Gynecologists.[1]

Because of inability to pay, plaintiff is unable to go to a private hospital and find a doctor who would perform the operation. Plaintiff went to the Medical Center because it is the only public hospital in the community where she lives and has a sliding scale of fees based on ability to pay. The Center is "funded, regulated and controlled fully or in part" by New York State or Nassau County.

In her complaint filed in November 1970, plaintiff further alleged that defendants' refusal to sterilize her, based upon the hospital's regulations, was taken under color of state law in violation of her rights under the first, fifth, eighth, ninth and fourteenth amendments to the Constitution of the United States. Relying upon 42 U.S.C. § 1983,[2] plaintiff sought a judgment preventing the hospital from further enforcing its

1. Plaintiff claims that Dr. Marcus was in error and that the American College of Obstetricians and Gynecologists has repudiated these rules. Appellant's Brief at 22.

2. Section 1983 states:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

sterilization rules, compelling it to perform the operation, declaring the rules unconstitutional, and compensating her for the damages she had suffered. In January 1971, as already indicated, the Medical Center changed its mind and gave plaintiff permission to be sterilized. She entered the hospital promptly and the operation was performed within two weeks, under a stipulation preserving various rights of the parties.

Shortly thereafter defendants moved to dismiss the complaint as moot. Plaintiff opposed the motion on the ground that performance of the surgery did not extinguish her claim for damages. A hearing was held before Judge Travia, who dismissed the action in a brief order which stated that:

> [T]he substantive issues . . . were moot and academic, and that all that possibly remained was a simple cause of action for damages, if any, over which this Court lacks jurisdiction and which could be brought in a state court when all issues could be resolved. . . .

From that dismissal plaintiff appeals.

## II

In this court, the parties have extensively briefed and argued the merits of plaintiff's constitutional claims as though those were the issues we are now called upon to decide. Thus, plaintiff claims, among other things, that defendants' refusal to permit her to be sterilized, based upon an age-parity formula,[3] invaded her right to privacy in her marital relationship, imposed upon her the religious beliefs of others, and denied her the equal protection of the laws not only because the age-parity rule discriminates against the poor but also because the distinctions based upon age are irrational. Plaintiff offers us a number of cases [4] and other authorities [5] to support these propositions. Defendants counter with an equally extensive discussion of the underlying constitutional claims along with supporting citations.[6] However interesting and serious these questions may be, we decline to comment on the merits except as may be necessary to decide this appeal. The district judge dismissed the action without an opinion, but the portion of his order quoted above and the colloquy before him when the motion was argued indicates that the bases of his decision were three: mootness, lack of jurisdiction and abstention. As will be seen below, none justified dismissal.

■ Although the request for injunctive relief was "moot and academic," as the district court said, the claim for

3. Defendants inform us that the formula is based on the age of the woman and the number of children. The older the woman, the fewer the children she must have at that age in order to qualify for the operation. *E. g.*, to obtain sterilization a woman of 25–29 must have five children, a woman of 30–34, four children, and a woman of 35 or over, three children. Appellees' Brief at 12.

4. *E. g.*, Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); School District of Abington Township v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1965); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); Baird v. Eisenstadt, 429 F.2d 1398 (1st Cir. 1970), prob. juris. noted, 401 U.S. 934, 91 S.Ct. 921, 28 L.Ed.2d 213 (1971); Chrisman v. Sisters of St. Joseph of Newark (D.Or., July 22, 1971); People v. Belous, 71 Cal.2d 954, 80 Cal.Rptr.

354, 458 P.2d 194 (1969), cert. denied, 397 U.S. 915, 90 S.Ct. 920, 25 L.Ed.2d 96 (1970); New York City v. Wyman, 321 N.Y.S.2d 695 (Sup.Ct.1971).

5. *E. g.*, Forbes, Voluntary Sterilization of Women as a Right, 18 De Paul L.Rev. 560 (1969); Note, Elective Sterilization, 113 U.Pa.L.Rev. 415 (1968).

6. *E. g.*, Corkey v. Edwards, 322 F.Supp. 1248 (W.D.N.C.1971), appeal docketed, 40 U.S.L.W. 3098 (U.S. July 17, 1971) (No. 71–92); Rosen v. Louisiana Bd. of Med. Examiners, 318 F.Supp. 1217 (E.D. La.1970), appeal docketed, 40 U.S.L.W. 3027 (U.S. Nov. 27, 1970) (No. 70–42); Doe v. Bolton, 319 F.Supp. 1048 (N.D. Ga.1970), juris. postponed, 402 U.S. 941, 91 S.Ct. 1614, 29 L.Ed.2d 109 (1971); Tierney, Voluntary Sterilization—A Necessary Alternative?, 4 Family L.Q. 373 (1970).

damages was not. The cases make clear that the damage claim of Mrs. McCabe under 42 U.S.C. § 1983 is not mooted merely because she no longer needs equitable relief. Powell v. McCormick, 395 U.S. 486, 495–500, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); Bond v. Floyd, 385 U.S. 116, 128 n. 4, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966); Winters v. Miller, 306 F.Supp. 1158, 1163 (E.D.N.Y.1969), rev'd on other grounds, 446 F.2d 65 (2d Cir. 1971).[7] A properly alleged damage claim was in the case from the start and was not inserted after the complaint was filed in an attempt to breathe life into a moribund dispute, as in Perrucci v. Gaffey, 450 F.2d 356 (2d Cir., 1971). Moreover, unlike our recent decision in Kerrigan v. Boucher, 450 F. 2d 487 (2d Cir., 1971), the claim for damages is not conceded to be nominal, since the complaint sought damages of $250,000. Although that amount may be familiar hyperbole, the complaint and supporting affidavits allege that for the period when defendants refused to perform the operation plaintiff was in constant fear of becoming pregnant, which caused great pain and suffering and increased the likelihood of further irreparable injury. See Chrisman v. Sisters of St. Joseph of Newark (D.Or.,

July 22, 1971). In the record below, and on argument in our court, plaintiff's counsel alluded to actual physical damage and medical expenses, and we are not prepared to say on this record that none could be proved [8] or even, where invasion of a constitutional right is alleged, that such proof is necessary to sustain section 1983 jurisdiction. See Smith v. Allwright, 321 U.S. 649, 64 S. Ct. 757, 88 L.Ed. 987 (1944); Basista v. Weir, 340 F.2d 74, 87–88 (3d Cir. 1965). Finally, the claim for damages is clearly based upon invasion of a right of "personal liberty" rather than a property right, so that our line of cases holding that there is no section 1983 jurisdiction in the latter instance does not apply. See, e. g., Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969) (1970) cert. denied 400 U.S. 841, 91 S.Ct. 82, 27 L. Ed.2d 75.

■ As to jurisdiction, the district court did not indicate why it was lacking, but defendants, represented by the County Attorney of Nassau County, argue that there is no section 1983 jurisdiction because they did not act "under color of any statute . . . of any State," but merely rendered "a discretionary decision" as physicians.[9] How-

---

7. We are informed, and it is of interest, that of three similar suits undertaken this year against three different hospitals, in two the hospitals quickly changed their rules and the plaintiffs were sterilized; in the third (this case), the hospital allowed sterilization after suit was brought. For a fourth suit with similar result, see New York Times, Oct. 3, 1971, p. 24, apparently reporting on Caferilli v. Peekskill Community Hospital, Docket No. 71-3617 (S.D.N.Y. 1971). Plaintiff suggests that if the doctrine of mootness is applied in these situations to remaining damage claims, hospitals can then succeed in immunizing their allegedly unconstitutional rules from legal attack. Cf. Lamont v. Postmaster General, 229 F.Supp. 913, 922 (S.D.N.Y. 1964) (3-judge court) (dissent), rev'd on other grounds, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965). On the question whether the mootness doctrine should be applied when recurring questions of public importance are raised, see Moore v. Ogilvie, 394 U.S.

814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); Note, Mootness on Appeal in the Supreme Court, 83 Harv.L.Rev. 1672, 1693–94 (1970).

8. E. g., before Judge Travia, plaintiff's counsel asserted that she had originally wanted the operation performed when her last child was delivered at the Medical Center, that the request was denied and that plaintiff was thereby subjected to

a second hospitalization, a second anesthetization, a second risk, discomfort, deprivation of the society of her family, taken away from her children, additional expense in providing for the care of her four children while she went into the hospital, pain and suffering, and, far from least, the mental anguish that during this period of months when they deprived her of the relief to which she was entitled, she was in constant danger of becoming pregnant.

9. Appellees' Brief at 20–21.

ever, the pleadings make plain that plaintiff's suit is not against a private hospital, see Campbell v. Glenwood Hills Hosp., Inc., 224 F.Supp. 27 (D.Minn. 1963), nor does it appear to be an action against physicians associated with a public hospital but serving in their private capacities, see Spampinato v. M. Breger & Co., 270 F.2d 46, 48–49 (2d Cir. 1959), cert. denied, 361 U.S. 944, 80 S.Ct. 409, 4 L.Ed.2d 363 (1960). The complaint alleges state funding of the Medical Center and state control "fully or in part" over the Center's rules and regulations. Defendants' answer admits that the Medical Center is a "community hospital, funded by certain public funds." Moreover, it appears that at least some of the individual defendants are paid out of public funds, although on this record we cannot be sure. The complaint thus sufficiently alleges that defendants are vested with and use power "possessed by virtue of state law," United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941), and that theirs was "conduct supported by state action," Adickes v. S. H. Kress & Co., 398 U.S. 144, 163, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). See generally Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Therefore, the requirement of section 1983 that the invasion of plaintiff's constitutional rights be "under color of" state law would appear to be met [10] or at least to be sufficiently alleged to withstand a motion to dismiss.[11]

The dissent, by its heavy reliance on one aspect of this court's decision in Powe v. Miles, 407 F.2d 73 (1968),[12] would apparently liken the Nassau County Medical Center to a private educational institution partially supported by state funds, and would thus hold that there is no section 1983 jurisdiction. But as just indicated, the pleadings present quite a different picture and suggest that this medical center is actually a public institution. Indeed, the Center's "very name . . . identifies it as a state institution," Powe v. Miles, *supra*, 407 F.2d at 82, as do its attorneys. The dissent also emphasizes that in order to satisfy section 1983's requirement of "under color of" state law, plaintiff must be able to point to a specific state statute which compels the defendants to act as they have. Whatever force that argument might have if the medical center were a private institution, it has no bearing on the facts as alleged in this complaint. Where a public institution or government employees are involved, no such statute is necessary. There was no law that required Frank Pape and his 12 fellow officers to break into James Monroe's home and make him and his wife stand naked, as alleged in the complaint in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). That case,

---

10. Compare United States v. Price, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966), and United States v. Wiseman, 445 F.2d 792, 794 (2d Cir. 1971), with Adickes v. S. H. Kress & Co., 398 U.S. 144, 211–212, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (Brennan, J., concurring). See generally H. Friendly, The Dartmouth College Case and the Public-Private Penumbra (1968).

11. The complaint also alleges that defendants were exercising "public functions." In United States v. Wiseman, *supra*, 445 F.2d at 796, this court, speaking through Judge Moore, recently affirmed that an activity which is "essentially and traditionally a public function," even if performed by private parties in no way under contract to the

state, may provide a basis for satisfying the requirement of "under color" of state law. See also Coleman v. Wagner College, 429 F.2d 1120 (2d Cir. 1970). Plaintiff appears to argue that the supplying of medical services by a hospital on the basis of inability to pay is "essentially and traditionally" a public function. Appellant's Brief at 33–35.

12. The decision held that the discipline of four liberal arts students by Alfred University, a private institution supported in part by state funds, was not "state action" for purposes of § 1983. The decision also held that disciplinary action against three students in one of the University's colleges, the New York State College of Ceramics, did constitute state action.

and the other decisions we have cited, explicitly hold that it is to the source of defendants' authority, not only to the laws that purport to justify their action, that we must look in determining whether they have acted under color of state law.

Of course, few decisions of doctors or administrators in a public hospital will provide a proper basis for a section 1983 action because such decisions do not usually affect rights secured by the Constitution and laws of the United States. See, *e. g.*, Church v. Hegstrom, 416 F.2d 449, 451 (2d Cir. 1969), in which this court held that even as to state prisoners, where state action is apparent, "[m]ere negligence in giving or failing to supply medical treatment alone will not suffice" for a section 1983 action. Similarly, the negligent running over of a pedestrian by a United States mail truck or the negligent lopping off of the wrong arm by a surgeon employed in a public hospital would be unfortunate, to say the least, and would give rise to actions based upon negligence but would not violate rights protected by section 1983. It is difficult to imagine a case where a valid constitutional claim grows out of negligent medical treatment alone. Where medical treatment of a patient in a public hospital is alleged to be the basis of an invasion of a recognized constitutional right, some other highly unusual factor would seem to be necessary. *E. g.*, intentional gross misconduct by a prison doctor amounting to cruel and unusual punishment, Martinez v. Mancusi, 443 F.2d 921, 924 (2d Cir.1970), cert. denied, 401 U.S. 983, 91 S.Ct. 1202, 28 L.Ed.2d 335 (1971); forcing medication upon a Christian Scientist over her objections based on religion, Winters v. Miller, 446 F.2d 65 (2d Cir. 1971).

The dissent attempts to characterize the defendants' action as "merely their judgment that the operation was not warranted in this plaintiff's case." This is simply incorrect. The essence of plaintiff's claim is just the opposite: Defendants' refusal to sterilize plaintiff was based not on medical factors peculiar to her case but on an arbitrary age-parity formula. In effect, according to plaintiff, this rule is as constitutionally odious as a rule prohibiting voluntary sterilization of blacks. Plaintiff argues that through use of the age-parity rule defendants violated her constitutional rights by attempting to decide for her that she must subject herself to the possibility of pregnancy, despite the risk to her health, and by attempting to decide how many children she and her husband should have and by what means they may prevent conception. We need not determine whether plaintiff's contentions are sound, particularly without a full development of the facts, but it is massive understatement to say that they are not frivolous. See Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Plaintiff is therefore entitled to a full adjudication in the district court.

The third apparent basis for dismissal was that plaintiff in any event could sue for malpractice in the state courts. Although a claim of malpractice was one of the causes of action in plaintiff's complaint, it was not the only or even the most prominent one. Under the governing authorities, *e. g.*, Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed. 2d 492 (1961), plaintiff clearly is entitled to press in the federal courts her claim that her federal constitutional rights have been violated. We have applied the doctrine of abstention from time to time in cases under the Civil Rights Acts but the reasons for doing so are narrowly defined and inapplicable here. See Coleman v. Ginsberg, 428 F.2d 767 (2d Cir. 1970).

Defendants also argue that plaintiff's failure to serve a notice of claim upon them within 90 days after the claim arose bars her suit under N.Y.County L. § 52 and N.Y.Gen.Municipal L. § 50–

e.[13] The issue was not raised below and strictly speaking we should not consider it. But in an effort to save judicial time after the remand we note that the statutes are inapplicable for at least the following reasons: The major relief originally sought was equitable, see Fontana v. Town of Hempstead, 18 A.D.2d 1084, 239 N.Y.S.2d 512 (2d Dep't 1963), aff'd, 13 N.Y.2d 1134, 247 N.Y.S. 2d 130, 196 N.E.2d 561 (1964); and defendants are estopped from making the argument because they had actual and prompt notice of plaintiff's claim, see Quintero v. Long Island R. R., 55 Misc. 2d 813, 286 N.Y.S.2d 748, 756–758 (Sup. Ct.1968), aff'd, 31 A.D.2d 844, 298 N. Y.S.2d 109 (2d Dep't 1969).

Case remanded for further proceedings consistent with this opinion.

HAYS, Circuit Judge (concurring):

I understand the scope of the remand directed by Judge Feinberg's opinion to include a possible reexamination by the district court of evidence bearing on the character of the hospital's conduct as being state action and as action taken under color of state law. With this explanation, I concur in the opinion.

MOORE, Circuit Judge (dissenting):

The opening sentence of the majority opinion presents, in my opinion, a quite inaccurate statement of the issue before us. To the many non-judicial issues as to which the federal courts increasingly include under their supervisory jurisdiction, I would not add to our decisions our fiat with respect to "the right of a woman to decide how many children she shall bear." This right (better termed "privilege") exists without the aid of any Women's Liberation Movement or constitutional protection and will not become State-controlled even in the all-too-rapidly-approaching year, 1984.[1] In actuality, this case does not involve this affirmative privilege but, to the contrary, a negative pregnant. In short the plaintiff does not wish to have any more children—at least if she has to become pregnant for this purpose.

The real issue for adjudication can only be formulated after the facts are examined because it would be unwise for a court to disclose its lack of expertise in a field highly controversial amongst medical and psychiatric experts, without a factual background.

Specifically, this appeal is from an order dismissing the complaint—hence, we must turn to the complaint itself to test its sufficiency. In substance, plaintiff sought (a) a declaratory judgment that "the rules and regulations of defendant, Medical Center, regarding sterilization and the action of the defendants in refusing to perform a tubal ligation upon her violate her rights under the First, Fifth, Ninth and Fourteenth Amendments to the Constitution"; (b) an injunction, mandatory in effect, that defendants perform such an operation; (c) that defendants make available the necessary doctors and facilities for this purpose; and (d) damages of $250,000 for the injury caused by defendants' wrongful actions.

In conclusory generalities, plaintiff alleges:

(a) invasion of her constitutional right to "privacy and liberty in matters relating to marriage, family and sex"

13. N.Y.County L. § 52 (McKinney 1950):
    Any claim or notice of claim against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature . . . must be made and served in compliance with section fifty-e of the general municipal law.
    N.Y.Gen Municipal L. § 50–e (McKinney 1965):
    In any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action . . . against a public corporation, as defined in the general corporation law [§§ 2, 3] . . . the notice shall comply with the provisions of this section and it shall be given within ninety days after the claim arises.

1. George Orwell, 1984.

and "to control of her own person" as guaranteed by the above-specified constitutional amendment;

(b) that she was placed in a precarious situation because "she might have become pregnant against the wishes of herself and her husband";

(c) that she was deprived of medical care because of the religious beliefs of others (First Amendment violation);

(d) deprivation of equal protection because of financial means;

(e) cruel and unusual punishment (Eighth Amendment) because of "the daily fear of an unwanted pregnancy";

(f) the right to choose to bear or not to bear children (First, Eighth, Ninth and Fourteenth Amendments); and

(g) invasion of the right of plaintiff and her physicians to receive and give treatment "determined by them to be desired, safe, indicated and proper" (same Amendments as in "(f)").

Plaintiff further alleges that defendants, "under the color of defendant Medical Center's rule ["by laws, rules, and regulations of defendant Medical Center did not allow the operation unless the applicant has five children"], refused to permit performance of the sterilization operation as a result of which plaintiff incurred damages.[2]

Affirmatively plaintiff asked the court to direct the defendants to make available "the doctors, the Medical Center premises and all equipment and support usually attendant thereto so that plaintiff may be sterilized forthwith."

Here, indeed, is an extraordinary request which asks a federal court to direct a hospital and such surgeons as may be connected with it in the obstetrical and gynecological field to declare as unconstitutional the rules of the Medical Center and, in effect, to substitute its judicial judgment with respect to the medical judgment of the defendants.

Plaintiff asserts that her suit is " . . authorized by Title 42 U.S.C. § 1983 and is to prevent her from deprivation under color of state law, statute, ordinance, regulation, custom or usage of rights, priveleges [sic], and immunities secured by the First, Fifth, Eight [sic], and Ninth Amendments. . . ." Damages also are claimed.

No "state law, statute, ordinance, regulation, custom or usage" is pleaded or even mentioned in the complaint. In fact, the only reference to the State of New York and the United States is found in the allegation that

" . . . the Medical Center . . . has been funded, regulated and controlled fully or in part by the State of New York (see Public Health Law) and the United States of America with respect to matters including but not limited to the construction and acquisition of facilities and equipment, licensing, inspection, payments for supplies and services to patients, Medicare and Medicaid, granting of special tax benefits, the setting of standards governing the promulgation of rules and regulations of the Medical Center, and the approval thereof and defendant Medical Center has had delegated to it by the State of New York public functions, including the power to determine with or without a hearing and irrespective of the medical judgment of a patient's physician, whether or not the patient may receive specific medical care."

The judgment in effect demanded is that the rules of the Medical Center be declared to be unconstitutional, that a mandatory injunction issue, that doctors and the Medical Center be made available for the performance of a sterilization operation and that because defendants' alleged refusal was "an exercise in malpractice" damages be awarded.

Upon motion for a preliminary injunction and cross motion by defendants to

2. Pleadings should "allege" not "suggest", as the majority states, that the Medical Center is a State institution. Such an allegation would then impose on plaintiff the burden of proving the allegation of action taken under color of State law.

dismiss the complaint, the trial court, upon a stipulation of the parties that plaintiff's motion " . . . for a preliminary injunction and other relief be and the same hereby is withdrawn, the defendants having permitted to be performed on the plaintiff the surgical procedure sought by her," ruled that " . . the substantive issues before this Court were moot and academic, and that all that possibly remained was a simple cause of action for damages, if any, over which this Court lacks jurisdiction and which could be brought in a state court where all issues could be resolved at a trial in such court." Accordingly, the Court dismissed the complaint. From this order, plaintiff appeals.

Plaintiff asserts that her suit is authorized by 42 U.S.C. § 1983. Under that section, liability only falls upon a person who acts " . . . under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory" and thereby subjects another person " . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

Of plaintiff's four requests for relief, (2) and (3) are academic because plaintiff no longer needs an order compelling the Hospital to afford her its facilities for a sterilization operation. As to (1), a declaratory judgment that the Hospital's rules deprived her of her constitutional rights to sterilization, a resolution of this question would seem to be equally academic. This leaves only (4), damages. Query whether such a claim is embraced with § 1983.

The mere fact that New York State has a Public Health Law, gives financial benefits to hospitals, and sets standards for the operation of hospitals in the State does not bestow upon them the character of State agencies. The subject of "state action" was carefully and extensively considered in Powe v. Miles,

407 F.2d 73 (1968) wherein this Court said (per Friendly, C. J., now Chief Judge):

" . . . the state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury. Putting the point another way, the state action, not the private action, must be the subject of complaint." *Powe* at 81.

The Court had no difficulty in finding the liberal arts Alfred University not an arm of the State. As to the New York State College of Ceramics, a quite different situation existed. The State furnished land, buildings, equipment, and met the entire budget "and in the last analysis it can tell Alfred not simply what to do but how to do it." (p. 83). As the Court said, "The very name of the college identifies it as a state institution." (p. 82).

In distinct contrast are the defendants in this case. Neither the Medical Center, its Administrator, the Chief of Obstetrics, nor the President of its Board of Managers function under State control or supervision except as general Public Health laws apply to all hospitals. The mere fact that the hospital is available to members of the public is not determinative or even relevant to the issue here. Furthermore, there is no statute wherein the State prescribes standards for sterilization or even delegates to hospitals on its behalf such authority. The Legislature has not presumed to tell doctors, how, when, or why they should operate on a patient.

Plaintiff's arguments and citation of cases would carry greater weight were they addressed to a statute forbidding sterilization (compare abortion cases) but New York allows sterilization.[3] That certain doctors may in a specific case perform, or in specific situations

---

3. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) does not apply here. The action of the police officers there clearly fell within the category of

State action. No allegation is made in plaintiff's complaint that the defendant doctors are State employees.

are unwilling to perform, a sterilization operation is not due to the compulsion of any State statute or regulation.

The State has an interest in supervising banks, insurance companies and corporations generally, but this does not mean that these institutions are State agencies or arms of the State or that any act on the part of a State-supervised company is done under color of state law. Fortunately for our society, the State has wisely not undertaken to establish medical guidelines and procedures for doctors and surgeons in public hospitals. Of all professions in which the exercise of judgment should be as uncontrolled as possible, it is the medical profession. A legislative determination that sterilization of a young woman would not result in possible psychiatric consequences and that a surgeon must so operate on the request of any member of the public or lose his license would be an enactment scarcely imaginable in the most totalitarian state.

§ 1983 does not bring every conceivable action into the federal courts but is specifically limited to any action taken ". . . under color of any statute, ordinance, regulation, * * * of any State or Territory * * *." There is no such statute, ordinance or regulation pleaded here. At most it is asserted that this particular hospital had adopted a rule or regulation which ". . . is completely without a medical rationale in that it is not intended to and does not in any way base its limitations on the performance of such surgical procedures on any possible danger or risk to a particular patient from the performance of the operation." There is no allegation or showing that such a regulation stems from any State statute, ordinance, or regulation. Presumably plaintiff would have us hold that any such rule must be State-oriented because of State funds being received. However, *Powe* distinctly points to the contrary conclusion.

Consideration must be given to the words up to now omitted in the discussion "custom, or usage." In other words, is there any custom or usage in the State which forbids sterilization under the circumstances here presented? A negative answer could be found in plaintiff's complaint and brief. Thus, she alleges (par. NINETEENTH) that ". . . there existed hospitals in other communities in this state and in the United States which would have permitted a sterilization in circumstances such as plaintiff's." And in her brief, it is asserted that, ". . . different hospitals in New York State have different rules on sterilization." (p. 26). Such a situation would belie a custom or usage in the State forbidding sterilization to persons similarly situated.

The subjects of "Custom or Usage" and "State Action" have recently received thorough analysis and discussion by the Supreme Court in Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The court there traced § 1983 to its origin in the Ku Klux Klan Act of April 20, 1871, 17 Stat. 13, and concluded that ". . . the lineal ancestor of § 1983, also indicates that the provision in question here was intended to encompass only conduct supported by state action." (p. 163, 90 S.Ct. p. 1611) and required "state involvement" (p. 166, 90 S.Ct. 1598) which, if it depended upon custom or usage, ". . . must have the force of law by virtue of the persistent practices of state officials." (p. 167, 90 S.Ct. p. 1613).

Whether any of plaintiff's alleged constitutional claims have any merit is not before us. We are even spared from rendering a declaratory judgment on the wisdom of the rules of the Obstetrical Department or a judicial pronouncement as to how to avoid conception. Plaintiff is now free from the "daily fear" imposed upon her by the doctors' rules which she regards as irrelevant to her life and thoughts. Her daily "frantic and fearful condition" should now be alleviated since she has become sterilized and she should no longer be in a position to cause "irreparable and psychological injury" to her husband and children.

Plaintiff, however, would keep alive the damage portion of her complaint wherein she claims that defendants' refusal to permit the sterilization operation was "an exercise in malpractice." To do this plaintiff must still comply with the requirements of § 1983. The conclusory allegation that the State of New York delegated to the Medical Center the power to determine ". . . whether or not the patient may receive specific medical care" (par. THIRD) is unsupported by any law or statute to this effect and would seem so unlikely of existence that it is insufficient to bring this case within § 1983. As to the public funds allegation, insufficiency is clearly established by *Powe*.

Plaintiff's claim does not gain strength merely because all elements except damages have been removed. To recover any damages under § 1983 the same "state action" and "under color of law" prerequisites must be alleged in a non-conclusory manner. This failure is the weakness of plaintiff's case under § 1983. Since by plaintiff's concession defendants' allegedly wrongful conduct was but an "exercise in malpractice," the trial court was undoubtedly mindful that, if there were any malpractice capable of proof, plaintiff could proceed in a state court without being burdened with the prerequisites of § 1983.

I believe that the majority opinion in its reliance upon § 1983 fails to limit it to its underlying purpose and, by assumptions of non-existent facts with respect to state action, has the potential of injecting the judiciary into the illegal practice of medicine and surgery. Viewed realistically, the doctors, the Medical Center, and the other defendants did not pretend that a State statute, ordinance, rule, regulation, custom, or usage prevented them from operating; it was merely their judgment that the operation was not warranted in this plaintiff's case. Query whether such a refusal would fit into the category of malpractice; it definitely, in my opinion, did not constitute State action under color of State law.

I, therefore, dissent.

